## In The Matter of the Birth Record of A.R.

■■■■■■■■■■■■

■■■■■■■■■■■■

*Lawrence D. MacDonald,* for petitioner.
*Anthony J. Miernicki,* for respondent.

*MUROSKI, J.,* June 23, 1982—

## PROCEDURAL HISTORY

On November 10, 1980, a petition was filed by J. R. seeking to amend the birth record of A. R. in order to "correct" it. A preliminary decree was issued by the court in the form of a citation to M. R., and a pre-hearing conference was scheduled for January 5, 1981. The petition was thereafter served on M. R., the natural mother and legal guardian of A. R., and upon the State Registrar of Vital Statistics. On November 24, 1980, the State Department of Health acknowledged receipt of the citation and petition and stated that it will not participate in the case but would simply comply with the court's final decree. On December 22, 1980, respondent, M. R., filed an answer which denied that the birth record of A. R. was in need of correction.

The pre-hearing conference scheduled for January 5, 1981, was rescheduled to March 13, 1981, upon motion of counsel for respondent. On January 12, 1981, pursuant to the motion of counsel for petitioner, the court ordered that petitioner, respondent, and the minor child, A. R., submit to a blood grouping test. Pre-hearing conferences were thereafter

twice continued by motion of counsel. On July 14, 1981, a pre-hearing conference was held.

On October 16, 1981, upon motion of petitioner, the court issued an order directing petitioner, respondent, and the minor child, A. R., to submit to a Human Leukocyte Antigen (HLA) Test at the Geisinger Medical Center, Thereafter, by motion of counsel for petitioner, on February 22, 1981, a hearing was scheduled for April 23, 1982.

At the time set for hearing, parties and their counsel appeared and presented testimony. The court requested and received briefs from counsel. As the record is closed, the matter is now ripe for adjudication.

## STATEMENT OF FACTS

Petitioner, J. R., and respondent, M. R., were married in the late 1950's. Two children, whose paternity is not in dispute, were born of this marriage. In May of 1969, after a long period of difficulty, Petitioner and respondent separated, never to reside together again. Petitioner left the marital home. A divorce action was initiated by respondent and a final decree was issued on February 23, 1971, by the Court of Common Pleas of Luzerne County.

A. R., the minor child whose birth record is questioned, was born on December 22, 1970. This child, as well as the other two children, have resided continually with respondent, her natural mother. Her birthday of December 22, 1970, indicates that the date of conception for her was in February or April of 1970. Petitioner denies having sexual relations with respondent during this time period, and in fact, denies any relations for a time period greatly in excess of the limited period when conception was possible. Respondent maintains that relations in fact did occur resulting in the birth of the minor child, A. R.

It is undisputed that at the time of the birth of the minor child, A. R., petitioner and respondent remained legally husband and wife, although they were separated. Petitioner maintains that he has never acknowledged paternity for A. R. and that he has never visited her or supported her, although he has done so for the other two (2) children. Respondent acknowledges that no formal proceeding was ever instituted to compel petitioner to support A. R., but indicated that she had received support payments from her former husband generally with no specific preference for whom the money was meant and that she felt it would be a waste of time to file formal proceedings due to her former husband's inability to pay any amount for support. At trial, respondent produced a receipt book which indicated support payments made to the family by petitioner. Petitioner maintains that he only discovered that he was named as the father of the minor child, A. R., on her birth record in 1980. Thereafter, this action was instituted. A blood grouping test was performed on the parties and minor child with the result not excluding petitioner as the natural father of the minor child. This test is commonly known as a red blood cell test which produces exclusionary evidence. An AHL white blood cell test was also ordered and performed but the results were not introduced into evidence. At trial, the court heard only the testimony of petitioner and respondent.

## STANDARD OF LAW

The court notes initially that it has exclusive jurisdiction over the birth record of A. R. pursuant to §711 (9) of the Probate, Estates and Fiduciaries Code; 20 Pa. C.S.A. §711(9). This section provides that the orphan's court division of the courts of common pleas is to consider all issues ". . . concerning

recordation of birth and birth records of the alteration, amendment, or modification of such birth records . . ." The purpose of this section is simply to create a procedure to insure that a birth record accurately states the identity of the child's parents.

In the instant case, it is undisputed that petitioner and respondent were man and wife during the period of conception and at the time of the birth of the minor child. Therefore, the minor child is presumed to be legitimate and the birth certificate is deemed to be prima facie evidence of the matters stated therein. (35 Pa. C.S.A. §450-810).

In the instant case, petitioner, in order to successfully rebut the presumption of legitimacy, must present evidence of non-access or lack of sexual intercourse which must be clear, direct, and convincing. Commonwealth ex. rel. Savruk v. Derby, 235 Pa. Super. 560, 344 A.2d 624 (1975), Burston v. Dodson, 390 A.2d 216, 257 Pa. Super. 1 (1978). The determination of non-access or lack of sexual intercourse is a factual determination which is made by the trial court after consideration of all evidence presented. Husband and wife are competent to testify against one another in a paternity proceeding as to the issues of non-access or sexual relations. Commonwealth ex. rel. Savruk v. Derby, supra.

In the instant case, petitioner clearly possesses the burden of proof as to persuading the court that he is in fact not the natural father of A. R. and therefore that the birth record should be amended. The proof offered by petitioner must be clear, direct and convincing.

## DISCUSSION

Petitioner chose to present only one witness, himself, and respondent chose to rebut his testimony by testifying herself. The court has had the opportunity

to hear the testimony presented and observe the demeanor of the witnesses as they presented their testimony. The court has also carefully reviewed the briefs and arguments submitted by counsel for the parties. After due consideration, the court believes that petitioner has failed to sustain his burden of proof and that therefore, his petition shall be dismissed.

The only testimony presented by petitioner in support of his claim of non-access and of lack of sexual relations was his own. After reviewing all the testimony in the entire record, the court concludes as a finding of fact that the testimony of petitioner is not credible.

Respondent presented testimony as to numerous times she engaged in sexual relations with petitioner before, during, and after the potential period for conception of A. R. Petitioner maintains that he was surprised by the birth of the minor child, A. R. The court finds this incredible in that petitioner was visiting the other minor children during this time period and simply cannot believe that he was unaware of Mrs. R.'s pregnancy and then birth of the child. The receipt books introduced into evidence by respondent also show that Mr. R. regularly contributed to the financial welfare of the family during the time period immediately prior and after the birth of the child.

Petitioner relies upon the alleged inaction of respondent to secure support payments for A. R. as an indication of the non-paternity of petitioner. The court specifically finds, however, that respondent's explanation for this apparent lack of interest to be plausible and credible. Mrs. R. had difficulty in enforcing existing support orders, and after doing so, received nominal amounts. She believed that petitioner could not pay any more than he was already

paying and that any effort to secure additional payment would be futile. The court is unwilling to accept the proposition that because respondent never sought a formal court order for support from petitioner that this is any determination as to paternity. This is simply a factor to be taken into consideration and in this case it has been.

The issue in this case is not the access of petitioner to respondent as it is agreed that he visited his family during the separation and during the potential conception period. Respondent testified as to specific times and days that intercourse occurred during one of these visits. Respondent also testified that she did not have intercourse with any other man during this time period.

The evidence presented by petitioner must have been clear, direct and convincing. R.J.K. v. B.L., 279 Pa. Super. 71, 420 A.2d 749 (1980); Burston v. Dodson, 257 Pa. Super. 1, 390 A.2d 216 (1978); Commonwealth ex. rel. Savruk v. Derby, 235 Pa. Super. 560, 344 A.2d 624 (1975), 42 Pa. C.S.A. §6762. Petitioner has failed to sustain this burden, as his testimony was not credible and this court is unwilling to interpret the actions of the respondent in the same manner as requested by petitioner.

## ORDER

Upon consideration of the testimony presented and the entire record, it is hereby ordered and decreed that the petition of J. R. to amend the birth record of A. R. is hereby denied and dismissed.