## Cochran v. Sponenberg

*Gregory V. Smith,* for plaintiff.
*Robert C. Wise,* for defendant.

WOLLET, *J.,* for the court en banc, February 25, 1983—This case comes before the court on plaintiff's exceptions to the court's opinion and order,

filed November 5, 1982, granting defendant's request that blood tests be performed in this matter. Plaintiff, joined by the Solicitor for the Lycoming County Domestic Relations Office, requested an argument en banc, which was held on January 14, 1983. The issues having been briefed and argued, they are ripe for decision.

A brief review of the facts is in order. Scott Allen Cochran was born to Brenda J. Cochran on November 12, 1977. On January 11, 1978, Allen Sponenberg executed a paternity statement affirming that he was the father of the minor child in question. The parties entered into an agreement for order of support, which was confirmed by an order of court filed on January 25, 1978. Defendant Sponenberg did not appeal from the entry of the order providing for support, and has substantially complied with the order.

By a memo dated July 16, 1982 from the Lycoming County Board of Assistance, the Lycoming County Domestic Relations Office was asked to review the support order, which was in the amount of $13 per week. The review proceedings did not take place. On October 6, 1982, defendant filed a petition for blood tests pursuant to the Uniform Act on Blood Tests to Determine Paternity, Act of July 9, 1976, P.L. 586, 42 P.S. §6131. Upon consideration of the parties' briefs and oral arguments, this court, per Wollet, J., granted the petition and ordered that blood tests be taken of plaintiff, defendant, and the minor child.

The thrust of plaintiff's and the Solicitor's exceptions is procedural. As recognized by the court in its previous opinion and order, the determination of paternity through a support order is final, and further review is foreclosed by res judicata, unless fraud or mutual mistake is shown, R.J.K. v. B.L., 279

Pa. Super. 71, 420 A.2d 749 (1980. See generally, Palchinski v. Palchinski, 253 Pa. Super. 171, 384 A.2d 1285 (1978) (the issue of paternity is res judicata once the alleged father fails to appeal from a final decree confirming a child support agreement.) The principal objection here is that the court granted the request for blood tests based simply upon defendants' allegations of fraud and mutual mistake. The solicitor contends, and we agree, that this court should require an evidentiary hearing first, and then, upon a finding of prima facie evidence of fraud or mutual mistake, order that blood tests be taken.

There are several cogent policy considerations for prefacing an order for blood tests with a finding of some evidence of fraud or mistake. As the solicitor points out, nearly 65 percent of all support/paternity petitions filed in 1981 were resolved through an uncontested acknowledgment of paternity. It is not difficult to imagine the chaotic results if all such acknowledgments could be contested through blood testing upon the mere allegations of fraud or mutual mistake. The doctrine of res judicata recognizes the importance of finality of judicial determinations; here, establishing a child's paternity is imperative for medical, financial, and estate purposes. Even more importantly, if a paternity acknowledgment would be successfully challenged after the child's sixth birthday, a new action to establish paternity would be barred by the statute of limitations. 42 Pa. C.S.A. § 6704 (e).

Of course, the policy reasons mentioned above must be balanced against the injustice worked upon an individual who, because of the mother's fraudulent acts or the mutual mistake of the parties, does not contest an allegation of paternity. A support order in such a case, unlike an ordinary civil judg-

ment, represents a continuing financial obligation of the defendant. Indeed, the court takes judicial notice of the fact that the Lycoming County Domestic Relations Office now notifies putative fathers of the effects of acknowledging paternity and the advisability of seeking legal counsel. The court concludes that, in balancing the conflicting needs of validity and finality in the judicial process, the alleged father must produce at least prima facie evidence of fraud or mutual mistake regarding his original acknowledgment, before the court will order blood tests to be taken. Moreover, defendant father should be required to pay the cost of all necessary blood tests. If he is successful in vacating the prior paternity and support order, then the mother shall reimburse the defendant for the cost of these tests.

## ORDER

And now, February 25, 1983, this court's order of November 5, 1982, is hereby vacated. The court reserves decision on defendant's petition requesting that blood tests be taken in this matter, until such time as an evidentiary hearing is held to determine if a prima facie case of fraud or mutual mistake exists. The district court administrator is directed to schedule this case for such a hearing, at the earliest possible date.