# GOVERNMENT OF THE VIRGIN ISLANDS EX REL: C.C., Petitioner
## v.
## A.P., Respondent

Fam. No. S160/1994

Territorial Court of the Virgin Islands

Div. of St. Croix

December 13, 1995

CHERYL WILLIAMS, ESQ., (Assistant Attorney General), St. Croix
U.S.V.I., *for Petitioner*

MICHAEL LEE, ESQ., St. Croix, U.S.V.I., *for Respondent*

STEELE, *Judge*

## MEMORANDUM OPINION AND ORDER

This matter presents an issue of first impression in this jurisdiction. The issue presented is whether a putative father who acknowledged paternity is barred by the doctrines of collateral estoppel, res judicata, or equitable estoppel contesting the paternity determination, even when blood testing establishes that the putative father is not the child's biological father. For the reasons stated herein, this Court finds that respondent is barred by the doctrines of collateral estoppel and res judicata from contesting the paternity determination.

## FACTS

Due to the sensitive nature of the proceedings, and to protect the best interest of the child, the Court will refer to the individuals by their initials. C.C., petitioner, and A.P., respondent were involved in an intimate relationship. A boy, A.P. Jr., and a girl, C.P., were born on March 18, 1978 and November 9, 1983, respectively.

Petitioner filed a complaint dated April 25, 1988, with the Virgin Islands Department of Justice, Division of Paternity and Child Support, alleging that respondent is C.P.'s father. A hearing was held on June 3, 1988 before a hearing officer at which time respondent acknowledged C.P. s paternity. The hearing officer then issued a judgment dated June 9, 1988, establishing that respondent is C.P.'s father and providing for child support.

The Government filed a Motion for Order to Show Cause on October 21, 1994, alleging that respondent is in arrearage of his child support payments. Respondent opposed the Government's motion. Moreover, he requested paternity testing to determine C.P.'s paternity. The Government opposed respondent's request for paternity testing arguing that the doctrines of collateral estoppel, res judicata, and equitable estoppel barred respondent from contesting his previous paternity acknowledgment. However, peti-

tioner consented to the paternity testing arguing that the Court is not bound by the result. The test result excluded respondent as being C.P.'s biological father.

## DISCUSSION

Respondent argues that the Court should terminate his child support obligation since the paternity test result establishes he is not the child's biological father. In response, the Government contends that respondent should continue to pay child support because he was determined to be the putative father. To support this argument, the Government relies on a June 9. 1988 paternity judgment where respondent acknowledged paternity before a hearing officer. (Government's Exhibit 2). Therefore, the Government argues that collateral estoppel, res judicata, and equitable estoppel prevent respondent from challenging paternity. However, respondent maintains that the hearing officer's judgment should not bar him from challenging paternity since he was neither aware that he had a right to challenge paternity nor represented by counsel at the paternity hearing. Furthermore, respondent argues that under Titie 16 V.I.C. § 291 (a) one may challenge paternity at any time before a child's eighteenth birthday.

■ Since this is a matter of first impression, the Court seeks guidance by reviewing how other jurisdictions have addressed the issue. The Court begins its analysis with the theory of collateral estoppel since it disposes of the issue.[1] A person is collaterally estopped from relitigating an issue if the following elements are satisfied:

> (1) the issue decided in the prior adjudication was identical with the one presented in the later action; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privily with a party to the prior adjudication; and (4) the party against

---

[1] For similar reasons as enumerated within this opinion, respondent would likewise be barred from challenging paternity by res judicata. Note, both theories differ only in that res judicata bars relitigation of the same cause of action between the same parties where there is a prior judgment, whereas collateral estoppel bars relitigation of a particular issue or determinative facts. *Roper v. Mabry*, 551 P.2d 1831, 1384 (Wash.App.1976).

whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action.

*Temple University v. White,* 941 F.2d 201, 212 (3d Cir.1991); *Shultz v. Connelly,* 548 A.2d 294, 296 (Pa. Super. 1988). Essentially, under the doctrine of collateral estoppel, an issue which has been addressed by a court of competent jurisdiction cannot be relitigated in a later action between the same parties or their privies in the same or different cause of action. *Simcox v. Simcox,* 546 N.E.2d 609, 611 (Ill.1989); *See Also, City of St. Joseph v. Johnson,* 539 S.W.2d 784, 785 (Mo.App.1976).

■ The issue before the Court, paternity of C.P., is identical to the issue which was presented to the hearing officer on June 3, 1988.[2] On that date, petitioner filed a complaint for support of C.P. Respondent appeared before the hearing officer and acknowledged paternity. The hearing officer then entered a support judgment. That support judgment "necessarily determine[d] the issue of paternity." *Shindel v. Leedom,* 504 A.2d 353 (1986); *See also, Commonwealth ex rel. Nedzwecky v. Nedzwecky,* 199 A.2d 490, 491 (Pa.Super. 1964)(implicit in the entry of a child support order is a finding of paternity). To challenge paternity, an appeal must be taken directly from the support order.[3] *Id.* Absent an appeal taken directly from the support order, or showing of fraud, the aggrieved party is foreclosed from challenging this determination. *Wacher v. Ascero,* 550 A.2d 1019, 1020 (Pa.Super. 1988); *Manze v. Manze 523 A.2d 821,* 824 (Pa.Super. 1987). In the case sub judice, C.P.'s paternity was necessarily determined in the June 9, 1988 support hearing when respondent entered into a support judgment without challenging it. Therefore, the first element of collateral estoppel is satisfied.

■ Likewise, the second element is satisfied since there was a final judgment on the merit. "Even though support orders are modifiable due to change in circumstances, the determination of

---

[2] Title 16 V.I.C. § 354 enables administrative officer to hear and render decisions in paternity and child support cases.

[3] This ruling is consistent with Title 16 V.I.C. § 354 which limits the time period for an appeal by providing that 'an appeal from an order of a hearing officer may be taken to the Family Division judge of the Territorial Court within twenty (20) days of the entry of the order.' (emphasis added)

paternity is a final decision of issue on the merits." *Schultz v. Connelly*, 548 at 297. Respondent argues, however, that the hearing officer's judgment is not a final judgment on the merit because under Title 16 V.I.C. § 291(a) an action for paternity may be brought at any time before the child's eighteenth birthday. Moreover, respondent argues that should C.P.'s biological father institute an action for paternity and it is determined by genetic testing that he is in fact the biological father, then A.P.'s acknowledgment would be invalid. In support of his argument, respondent cites *Clark v. Clark*, Terr. Ct. Family No. D35/1993. Respondent argues that *Clark* gives preference to blood testing as the determinative factor in establishing paternity. Therefore, the paternity result and not respondent's acknowledgment should be determinative.

 This Court is not persuaded by respondent's interpretation of § 291(a) and *Clark*. Indeed, § 291(a) provides that paternity may be established at any time before the child's eighteenth birthday. However, § 291 (a) should not be interpreted to mean that until paternity is established by genetic testing, the paternity determination may be successfully challenged. Paternity may be established in various ways to include voluntary acknowledgment of paternity or court order establishing paternity. Title 16 V.I.C. § 354 explicitly provides for a hearing officer to accept voluntary acknowledgment of paternity. Once paternity acknowledgment is accepted, that decision is final unless challenged within the appropriate time.

Moreover, respondent misconstrues *Clark's* holding. In *Clark*, a wife instituted a divorce proceeding and requested that a child born during the marriage be declared not the husband's son. To determine paternity, the wife requested that the husband submit to Human Leukocyte Antigen (HLA) blood testing. In granting the wife's request to use HLA testing to determine paternity, the court in *Clark* citing *Government of the Virgin Islands v. Malone*, 23 V.I. 11 (Terr Ct. 1987),stated that "HLA testing for paternity has become an accepted and widely used system for paternity truth seeking." Family No. D35 at 5. Accordingly, the court in Clark felt that the use of HLA would be the most appropriate mechanism for resolving the dispute between the parties. *Id.*

18

The facts in Clark are clearly distinguishable from the case sub judice. In *Clark* there was never a paternity determination prior to the HLA blood testing. However, under Title 19 V.I.C. § 833, "a child born to a mother who is legally married is presumed to be the husband's child unless the mother gives information to the contrary or unless paternity has been established through court action. . ." Therefore, in *Clark* the husband was presumed to be the child's father without a paternal determination. However, since the law implies a rebuttable presumption, this presumption of paternity could be challenged until there was a paternal determination.

In the present case, paternity was clearly established through respondent's acknowledgment before the hearing officer. Therefore, there is no need to use HLA blood testing or any other means to establish paternity. Furthermore, "[t]he result of the HLA blood test is not conclusive evidence of paternity, but is evidence similar to any other evidence to be utilized by the fact-finder in making its determination." *Malone*, 23 V.I. at 14. However, it would be nonsensical to conclude that paternity determination, by the use of HLA blood testing, could successfully be challenge because the result is not conclusive. Fortunately, our statute does not require such strict standards for paternity determination. All that is required to establish paternity is sufficient evidence to convince the fact finder that the person accused is indeed the father.

The third element of collateral estoppel is obviously satisfied because respondent was a party to the prior paternity determination. The final element of collateral estoppel is also satisfied despite respondent's allegation that he did not have a full and fair opportunity to litigate the issue at the paternity hearing. Specifically, respondent asserts that he did not have a full and fair opportunity to litigate, despite his voluntary acknowledgment of paternity, because he was unrepresented by counsel and was not aware he could challenge paternity.

■ The Court finds these arguments without merit. The Virgin Islands Code does not mandate a person be represented by counsel in a paternity hearing. Pursuant to § 84 of the Territorial Court Rules a person has the right to counsel in criminal and quasi-criminal cases. Additionally, Title 16 § 303 defines paternity deter-

19

mination to be in the form of a quasi-criminal action. Consequently, there is a right to counsel in paternity hearings. However, the right to counsel should not be interpreted to mean represented by counsel. "Due process is satisfied so long as the accused is *afforded* a fair and reasonable opportunity to obtain his chosen counsel and there is no arbitrary action prohibiting effective use of such counsel. *U.S. v. Kikamura*, 947 F.2d 72, 78 (3d Cir.1991) citing *United States ex rel. Carey v. Rundle*, 409 F.2d 1210, 1215 (3d Cir. 1969)(emphasis added). Although respondent argues that he was not represented by counsel, he did not submit any evidence to show that he was not afforded the opportunity to obtain one. On the contrary, the facts simply suggest that respondent did not exercise his right to counsel.

Furthermore, the Court is not persuaded that respondent was unaware he could challenge paternity. The facts clearly suggest a contrary conclusion. In his affidavit, respondent states that *"Prior to* and since [C.P.'s] birth, and as recently as three weeks ago, I have been the recipient of remarks from various people suggesting that I may not be the father of [C.P.]." (Respondent's Exhibit 1 ) This seemingly suggests that respondent had notice that he may not be C.P.'s father prior to the paternity determination. It appears only logical that a man who is abreast of information which indicates the possibility that he may not be a child's father would know he could require more proof of paternity than petitioner's mere accusation. Therefore, it is contrary to common sense that respondent would like this Court to believe that he was not aware he could challenge paternity.

█ Indeed all the elements of collateral estoppel are satisfied. Thus, respondent is barred from relitigating the issue of paternity. Accordingly, the hearing officer's determination must stand unless respondent establishes fraud. Respondent argues that since the paternity test determined he is not the C.P.'s biological father then petitioner committed fraud by not making this fact known, because petitioner must have known or should have known this fact. However, merely neglecting to convey information does not amount to fraud. The following elements are necessary to establish fraud:

(1) a misrepresentation; (2) a fraudulent utterance thereof; (3) an intention by the maker that the recipient will thereby be induced to act; (4) justifiable reliance by the recipient upon the misrepresentation, and (5) damage to the recipient as the proximate result

B.O. v. C.O., 590 A.2d 313, 315 (Pa.Super. 1991). Primarily, a person "alleging fraud must prove by clear and convincing evidence that a person *knowingly* and *intentionally* made a representation of a material fact with the intent to mislead and that the other party relied on the misrepresentation to his detriment. *Dunbar v. Hogan*, 432 S.E.2d 16 (Va.App. 1993)(emphasis added).

██ Upon reviewing the evidence, the Court finds that respondent has not established that petitioner knowingly and intentionally made false representations of material facts intending to mislead him. Petitioner could not have committed fraud when she was not cognizant of the fact that respondent was not C.P.'s father. Petitioner became knowledgeable of this information upon learning the result of the paternity test. At best, petitioner knew only that she had intimate relationships with more than one person. However, this fact does not in and of MEMORANDUM OPINION Government of the Virgin Islands, Ex Rel: C.C. v. A.P. Page 11 itself suggest that petitioner intentionally conveyed false information to respondent with knowledge that he was not the father. Furthermore, respondent also knew that petitioner had other relationships. In respondent's Supplemental Response to Motion and Order to Show Cause, he stated that "petitioner *openly* dated other persons prior to and during the period of [C.P.'s] conception and birth." (emphasis added) Therefore, respondent conceivably knew that petitioner may have engaged in intimate relationships with other individuals.

Nevertheless, the fact that respondent knew or did not know that petitioner had more than one intimate relationship is not controlling in determining if petitioner committed fraud. The controlling issue is that respondent has not presented clear and convincing evidence which establishes that petitioner knowingly and intentionally made misrepresentations of material facts. The only evidence presented by respondent is the fact that the paternity

21

test contradicts petitioner's allegation. However, the fact that petitioner accused respondent of being C.P.'s father, knowing she had engaged in more than one intimate relationship, does not amount to fraud without the adequate mental state. The facts do not suggest that petitioner possessed the adequate mental state to commit fraud, i.e., intent.

## CONCLUSION

Occasionally in rendering an opinion, the Court ponders adnauseam because of the social implication of its decision. This is particularly true when the Court's decision impacts upon one of the most fundamental areas within our society, the family structure. In the final analysis, however, the Court cannot lose sight of one of its most crucial roles, to apply the laws, as written, to the given facts. In so doing, the Court sometimes can reach only one conclusion. This is precisely true of the issue presented before this Court. Accordingly, upon a thorough review of the evidence, the Court finds that respondent is collaterally estopped from challenging paternity.

## ORDER

In accordance with the Memorandum Opinion of even date, it is hereby ORDERED that respondent is barred by collateral estoppel and res judicata from challenging paternity of the minor child C.P.

DONE AND SO ORDERED this 13 day of December, 1995.